IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TONYA TAYLOR-BURNS<br>　　　　Plaintiff,<br><br>v.<br><br>AR RESOURCES, INC.<br>　　　　Defendant. | :<br>:<br>:　No.　16-1259<br>:<br>:<br>:<br>:<br>:<br>: |

## NOTICE OF MOTION FOR SUMMARY JUDGMENT

To:　Daniel Kohn, Esquire
　　　RC Law Group PLLC
　　　285 Passaic Street
　　　Hackensack, NJ 07601
　　　Attorneys for Plaintiff

**PLEASE TAKE NOTICE** that on **Thursday, February 9, 2017**, at 12:00 p.m. or as soon thereafter as counsel may be heard, the undersigned attorneys for Defendant, AR Resources, Inc., will move before the Honorable Robert W. Sweet, United States District Court for the Southern District of New York, at the Daniel Patrick Moynihan United States District Courthouse, 500 Pearl Street, New York, NY 10007, for an Order granting summary judgment in Defendant's favor pursuant to Fed. R. Civ. P. 56.

　　　　　　　　　　　　　　　　　HIGH SWARTZ LLP

　　　　　　　　　　　　　　　By:_/s/ Kevin Cornish_____
　　　　　　　　　　　　　　　　　Kevin Cornish, Esquire
　　　　　　　　　　　　　　　　　kcornish@highswartz.com
　　　　　　　　　　　　　　　　　40 East Airy Street
　　　　　　　　　　　　　　　　　Norristown, PA 19404
　　　　　　　　　　　　　　　　　610-275-0700 (voice); 610-275-5290 (fax)
　　　　　　　　　　　　　　　　　Counsel for Defendant AR Resources, Inc.

Date: January 16, 2017

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TONYA TAYLOR-BURNS : | |
|       Plaintiff, : | |
| : | No.   16-1259 |
| v. : | |
| : | |
| AR RESOURCES, INC. : | |
|       Defendant. : | |

**BRIEF IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

                                                                                              Page

TABLE OF CONTENTS ........................................................................................... ii

TABLE OF AUTHORITIES .................................................................................... iii

I.     PRELIMINARY STATEMENT ....................................................................1

II.    FACTS .............................................................................................................2

III.   LEGAL ARGUMENT ....................................................................................2

       A.     Standard of Review ...............................................................................2

       B.     Summary judgment must be granted in favor of ARR because there was no valid dispute of the subject debt. ................................................2

       C.     Summary judgment must be granted in favor of ARR on Burns' claim for attorney's fees because Burns' purported fee agreement was illegal and invalid. ..5

              1. *Champerty* ......................................................................................5

              2. *Rules of Professional Conduct* ....................................................7

IV.    CONCLUSION ................................................................................................8

# TABLE OF AUTHORITIES

**AUTHORITY**                                                             **PAGE**

**Cases**

*Bluebird Partners, L.P. v. First Fidelity Bank, N.A.*, 94 N.Y.2d 726, 733, 709 N.Y.S.2d 865, 731 N.E.2d 581 (2000)..................................................................................................5

*Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010)................4

*In re Clark*, 184 N.Y. 222, 225, 77 N.E. 1, 2 (1906).........................................................8

*Jane St. Holding, LLC v. Aspen Am. Ins. Co.*, 13 CIV. 2291 RWS, 2014 WL 28600, at *4 (S.D.N.Y. Jan. 2, 2014), aff'd, 581 Fed.Appx. 49 (2d Cir. 2014).......................................2

*Justinian Capital SPC ex rel. Blue Heron Segregated Portfolio v. WestLB AG*, 37 Misc.3d 518, 523–24, 952 N.Y.S.2d 725, 731 (N.Y. Sup. Ct. 2012)................................................5

**Statutes**

15 U.S.C. § 1679 *et seq.*.............................................................................................3, 4

15 U.S.C. § 1692 *et seq.*.............................................................................................1, 2

N.Y. Judiciary Law § 488(1) (McKinney) .........................................................................5

**Rules of Civil Procedure**

Fed. R. Civ. P. 56................................................................................................1, 2, 8

**Rules of Professional Conduct**

NY ST RPC Rule 1.8(i) (McKinney) .................................................................................7

NY ST RPC Rule 5.4 (McKinney) ....................................................................................7

NY ST RPC Rule 7.2 (McKinney) ....................................................................................8

I.   **PRELIMINARY STATEMENT**

Defendant, AR Resources, Inc. ("ARR"), through its counsel High Swartz LLP, hereby submits its Brief in support of its Motion for Summary Judgment against Plaintiff, Tonya Taylor Burns ("Burns").

This matter involves an alleged violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). Burns alleges that ARR violated the FDCPA by failing to list an account as disputed after she purportedly sent a letter to ARR disputing the debt. Burns is seeking actual damages, statutory damages, attorney's fees and costs.

Burns admits that she did not prepare or sign the dispute letter to ARR and did not send the dispute letter to ARR. While Burns alleges that she retained a credit repair agency to dispute the subject debt, the purported agreement with said agency is void under Federal law. Therefore no valid dispute was ever submitted to ARR.

In addition, Burns testified that she did not enter into any fee agreement with her counsel, then later produced a purported fee agreement that clearly violates the champerty laws and Rules of Professional Conduct of the State of New York. Therefore, even if Burns could establish a violation of the FDCPA, she cannot recover her requested attorney's fees.

The record collected in this matter establishes that Burns' claims are manufactured by her counsel and an associated credit repair agency, without any real involvement by Burns, to attempt to recover statutory damages and attorney's fees primarily for the benefit of Burns' counsel.

Therefore, ARR respectfully requests summary judgment in its favor and against Burns pursuant to Fed. R. Civ. P. 56.

1

## II. FACTS

See the accompanying Statement of Material Facts, which is incorporated by reference. ARR further incorporates all defined terms from the Statement of Material Facts Not in Dispute.

## III. LEGAL ARGUMENT

### A. Standard Of Review

The standard for deciding a summary judgment motion under Fed. R. Civ. P. 56 is well settled and understood by this Honorable Court. *See* Your Honor's opinion in *Jane St. Holding, LLC v. Aspen Am. Ins. Co.*, 13 CIV. 2291 RWS, 2014 WL 28600, at *4 (S.D.N.Y. Jan. 2, 2014), aff'd, 581 Fed.Appx. 49 (2d Cir. 2014) (granting summary judgment for defendant).

### B. Summary judgment must be granted in favor of ARR because there was no valid dispute of the subject debt.

The entirety of Burns' claim is based upon ARR's failure to report a debt as disputed after receiving the Letter. *See* Exhibit "A," Complaint.

The FDCPA prohibits: "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. 1692e(8). In order for a debt collector to fail to communicate that a debt is disputed, the debt collector must first receive a valid dispute of the debt. However, no valid dispute exists in this matter.

Burns testified that she did not prepare, sign or send the Letter. Exhibit "B," Letter; Exhibit "C," Burns Dep. 4:25-5:12. Rather, she contacted CS360, who sent the Letter on her behalf. Exhibit "C," Burns Dep. 5:6-9. However, as a matter of law, CS360 was not authorized to send the Letter on Burns' behalf.

2

CS360 is a credit repair organization as defined by the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.* ("CROA"). Exhibit "C," Burns Dep. 7:25-8:1; Exhibit "D," CS360 Agreement. Specifically, the CROA defines a credit repair organization as:

> The term "credit repair organization"--
>
> (A) means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of--
>
> (i) improving any consumer's credit record, credit history, or credit rating; or
>
> (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i); and
>
> (B) does not include--
>
> (i) any nonprofit organization which is exempt from taxation under section 501(c)(3) of Title 26;
>
> (ii) any creditor (as defined in section 1602 of this title), with respect to any consumer, to the extent the creditor is assisting the consumer to restructure any debt owed by the consumer to the creditor; or
>
> (iii) any depository institution (as that term is defined in section 1813 of Title 12) or any Federal or State credit union (as those terms are defined in section 1752 of Title 12), or any affiliate or subsidiary of such a depository institution or credit union.

15 U.S.C. § 1679a(3).

Under the CROA, there must be a written contract between the client and the organization that includes several mandatory terms and disclosures. The CROA makes any contract not in compliance with the CROA <u>void and unenforceable</u>:

> Any contract for services which does not comply with the applicable provisions of this subchapter--
>
> (1) shall be treated as void; and

3

>   (2) may not be enforced by any Federal or State court or any other person.

15 U.S.C. § 1679f(c) (emphasis added).

The CS360 Agreement utterly fails to comply with the CROA. The lack of compliance includes:

- Failure to include the required written statement with the contract as set forth in 15 U.S.C. § 1679c;

- Failure to have a dated contract – 15 U.S.C. § 1679d(a)(1);

- Failure to provide a full and detailed description of the services to be provided – 15 U.S.C. § 1679d(b)(2);

- Failure to provide an estimate of the date by which the performance of the services will be complete – 15 U.S.C. § 1679d(b)(2)(B)(i);

- Failure to provide the length of the time period necessary to perform such services – 15 U.S.C. § 1679d(b)(2)(B)(ii);

- Failure to identify the credit repair organization's principal business address – 15 U.S.C. § 1679d(b)(3);

- Failure to include the three day cancellation notice – 15 U.S.C. § 1679d(b)(4).

Because Burns' contract with CS360 fails to comply with the CROA, the CS360 Agreement is <u>void</u> and this Court cannot enforce it. 15 U.S.C. § 1679f(c)(1) and (2) (emphasis added).

The lack of a CROA compliant contract between CS360 and Burns means that CS360 had no authority to send the Letter on Burns' behalf. *Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010) ("An agent must have authority, whether apparent, actual or implied, to bind his principal.")

Burns admits that she did not submit the dispute of the subject debt to ARR. Rather, she relies on CS360, which had no valid legal authority to dispute the debt with ARR. Therefore, no

4

valid dispute occurred and ARR cannot be liable for an alleged failure to report the debt as disputed.

      C.    <u>Summary judgment must be granted in favor of ARR on Burns' claim for attorney's fees because Burns' purported fee agreement was illegal and invalid.</u>

Burns requests an award of attorney's fees as damages in this case. *See* Exhibit "A," Complaint Wherefore clause. Burns produced a fee agreement with her counsel, RC Law Group, which states that it is governed by New York law. Exhibit "F," RC Law Agreement. However, attorney's fees cannot be awarded in this matter because the RC Law Agreement violates New York's champerty laws and ethical rules.

      1.    <u>Champerty</u>

"Champerty, as a term of art, grew out of the practice ... where someone bought an interest in a claim under litigation, agreeing to bear the expenses but also to share the benefits if the suit succeeded. Champerty was developed to prevent or curtail the commercialization of or trading in litigation." *Justinian Capital SPC ex rel. Blue Heron Segregated Portfolio v. WestLB AG*, 37 Misc.3d 518, 523–24, 952 N.Y.S.2d 725, 731 (N.Y. Sup. Ct. 2012) (citing *Bluebird Partners, L.P. v. First Fidelity Bank, N.A.*, 94 N.Y.2d 726, 733, 709 N.Y.S.2d 865, 731 N.E.2d 581 (2000)). New York adopted the prohibition against champerty by statute providing:

> An attorney or counselor shall not:
>
> Directly or indirectly, buy, take an assignment of or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose of bringing an action thereon.

N.Y. Judiciary Law § 488(1) (McKinney).

The evidence produced in this matter establishes that CS360 exists for the purpose of identifying potential individuals to act as plaintiffs in consumer protection lawsuits filed by RC

5

Law. The CS360 Agreement states that it provides free credit repair services to clients. Exhibit "D," CS360 Agreement. CS360 only receives payment of $150.00 "from FDCPA settlement funds collected for Client in excess of $200.00." Exhibit "D," CS360 Agreement. However, CS360 is not a law firm and cannot be able to represent clients in FDCPA lawsuits. So the CS360 Agreement further provides that CS360 is authorized "to share any info that could be a potential claim against such companies with RC Law Group so that it may pursue such claims on my behalf." Exhibit "D," CS360 Agreement. As such, CS360 depends on successful FDCPA claims filed by RC Law Group in order to get paid for its service. CS360 and RC Law Group are clearly intertwined entities that depend upon each other to generate revenue through filing lawsuits. RC Law Group even identifies CS360 as a client in its fee agreement with its client. Exhibit "F," RC Law Agreement.

More importantly, the CS360 Agreement and the RC Law Agreement indicate that their related operations depend upon the client, here Burns, to sign over the majority of their interests in the lawsuit to CS360 and RC Law Group, for those entities to pursue FDCPA claims as they please and share in the majority of any spoils. The RC Law Agreement states that RC Law Group is providing "legal advice and services for suits and issues that <u>may arise</u>" under the FDCPA. Exhibit "F," RC Law Agreement (emphasis added). The RC Law Agreement further states in its scope of services that it will represent the client (Burns) for "potential claims" and that "RC Law will investigate potential claims and if RC Law deems such potential claims viable, RC Law will file suit on Client's behalf and/or seek to have the debt collector(s) settle the claim(s)." Exhibit "F," RC Law Agreement. Based on this language, RC Law Group is retained by clients such as Burns, through CS360, to pursue unknown claims, not identified at the time of

6

the alleged agreement. In doing so, CS360 and RC Law Group are assuming a direct interest in the lawsuit, the very act that New York's champerty laws seek to prohibit.

The RC Law Agreement's summary of the division of any potential recovery from an FDCPA lawsuit most clearly illustrates the champertous relationship created by this situation. The RC Law Agreement provides that RC Law is entitled to take 45% of any actual damages recovery (of which there is no evidence in this and most cases), 80% of any statutory damages, and all attorney's fees and costs. Burns, as the client and plaintiff in the case, therefore stands to recover at most $200, and likely only $50 after payment of CS360's $150 fee, from a successful FDCPA claim.[1] *See* Exhibit "E," CS360 Agreement and Exhibit "F," RC Law Agreement.

It is clear from the RC Law Agreement and CS360 Agreement that RC Law Group has directly or indirectly taken over an interest in the Burns' cause of action. Since RC Law Group's involvement in this matter is prohibited by the champerty laws of New York, this Court should deny any attorney's fees award in this matter.

### 2. Rules of Professional Conduct

RC Law Group should also be denied recovery of attorney's fees due to its various violations of New York Rules of Professional Conduct, as discussed below.

Rule 1.8(i) prohibits a lawyer from acquiring a proprietary interest in a lawsuit. By taking an 80% contingent fee on statutory damages, 45% contingent fee on actual damages, in addition to all attorney's fees and costs, RC Law Group took a proprietary interest in this lawsuit. NY ST RPC Rule 1.8(i) (McKinney).

Rule 5.4 prohibits a lawyer from sharing legal fees with a non-lawyer. The CS360 Agreement very clearly states that RC Law Group pays CS360 $150.00 out of FDCPA

---

[1] Of course, in the highly unlikely scenario that a client such as Burns could prove actual damages, the client would obtain only 55% of such damages which RC Law Group would retain 45% of such damages. However, Burns testified that she does not have any actual damages. Exhibit "C," Burns Dep. 49:3-51:5.

7

settlements that RC Law Group obtains on behalf of client's such as Burns. NY ST RPC Rule 5.4 (McKinney).

Rule 7.2 prohibits a lawyer from compensating a person or organization to recommend or obtain employment by a client. NY ST RPC Rule 7.2 (McKinney). During Bergida's deposition, he testified that RC Law Group compensates CS360 for referring clients to RC Law Group. Exhibit "G," Bergida Dep. 106:6-20; *see also In re Clark*, 184 N.Y. 222, 225, 77 N.E. 1, 2 (1906) (punishing lawyer for paying a third party to obtain clients on the attorney's behalf).

Based on these clear violations of the New York Rules of Professional Conduct, and the champerty laws discussed above, made applicable through the choice of law provision in the RC Law Agreement, Burns' attorneys should not be entitled to any attorney's fees in this matter and that portion of her claim should be dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, pursuant to Fed. R. Civ. P. 56, summary judgment must be entered in favor of ARR and Burns' Complaint must be dismissed with prejudice.

HIGH SWARTZ LLP

By: _____
Kevin Cornish, Esquire
kcornish@highswartz.com
40 East Airy Street
Norristown, PA 19404
610-275-0700 (voice); 610-275-5290 (fax)
Counsel for Defendant AR Resources, Inc.

Date: January 16, 2017

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TONYA TAYLOR-BURNS<br>    Plaintiff, | :<br>: |
| | :      No.   16-1259 |
| v. | : |
| | : |
| AR RESOURCES, INC.<br>    Defendant. | :<br>: |

### STATEMENT OF MATERIAL FACTS
### IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to L. Civ. R. 56.1(a), Defendant, AR Resources, Inc., through its counsel High Swartz LLP, hereby submits its Statement of Material Facts Not in Dispute, in support of its Motion for Summary Judgment against Plaintiff, Tonya Taylor Burns.

1.  Plaintiff, Tonya Taylor Burns ("Burns"), filed this lawsuit under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") against Defendant, AR Resources, Inc. ("ARR").[1] *See* Exhibit "A," Complaint.

2.  Burns alleges that ARR violated the FDCPA by failing to list an account as disputed after she purportedly sent a letter to ARR disputing the debt. Exhibit "A," Complaint ¶ 11.

3.  Burns alleges that ARR's failure to report the debt as disputed violates multiple provisions of the FDCPA. Exhibit "A," Complaint ¶ 13.

4.  Burns is requesting actual damages, statutory damages, and attorney's fees and costs. Exhibit "A," Complaint Wherefore Clause.

5.  At her deposition, Burns identified the purported dispute letter ("Letter") that was sent to ARR. Exhibit "B," Letter; Exhibit "C," Burns Dep. 4:21-5:3.

---

[1] Ridgeway initially filed this lawsuit in the Civil Court for the City of New York but ARR removed the matter to this Honorable Court pursuant to 28 U.S.C. § 1331.

6. The Letter is dated June 5, 2015. Exhibit "B," Letter.

7. Burns did not send the Letter. Exhibit "C," Ridgeway Dep. 4:25-5:1.

8. Burns did not write the Letter. Exhibit "C," Ridgeway Dep. 5:6-7.

9. Burns did not sign the Letter. Exhibit "B," Letter; Exhibit "C," Burns Dep. 5:11-12.

10. The Letter was sent via facsimile from 1-303-991-7930, which is a Denver Colorado area code.[2] Exhibit "B," Letter.

11. Burns was not in Denver Colorado on June 5, 2015. Exhibit "C," Burns Dep. 4:11-13.

12. Burns resides in Manhattan. Exhibit "C," Burns Dep. 7:7-9.

13. Collection Shield 360 ("CS360") wrote the Letter. Exhibit "C," Burns Dep. 5:6-9.

14. CS360 is a credit repair agency. Exhibit "C," Burns Dep. 7:25-8:1.

15. Burns placed a telephone call to CS360 to obtain credit repair services. Exhibit "C," Burns Dep. 8:2-5.

16. After Burns' deposition, Burns and CS360 produced an undated copy of a Collection Shield 360 Service Agreement ("CS360 Agreement") with Burns' purported electronic signature. Exhibit "D," CS360 Agreement; Exhibit "E," Plaintiff's Discovery Responses.

---

[2] The Court may take judicial notice of area code locations. *See LCI Commc'ns, Inc. v. Wilson*, 700 F.Supp. 1390, 1393 (W.D. Pa. 1988); F.R.E. 201.

17. The CS360 Agreement authorizes CS360 "to share any info that could be a potential claim against such companies with RC Law Group so that it may pursue such claims on my behalf." Exhibit "D," CS360 Agreement.

18. The CS360 Agreement further states that Burns is not responsible to pay CS360 for the deletion of collection accounts. Exhibit "D," CS360 Agreement.

19. However, CS360 is entitled to "receive a fee of $150.00 per Deleted Collection account only from FDCPA settlement funds collected for Client in excess of $200.00." Exhibit "D," CS360 Agreement.

20. This lawsuit was filed on or about January 11, 2016. Exhibit "A," Complaint.

21. CS360 does business at 7150 Parsons Avenue, Flushing, NY. Exhibit "G," Bergida Dep. 39:6-10.

22. RC Law Group also does business at 7150 Parsons Avenue, Flushing, NY. Exhibit "H," RC Law Website.

23. Burns testified that she did not sign any fee agreement with RC Law Group. Exhibit "C," Burns Dep. 52:1-7.

24. However, after her deposition, Burns produced an undated Retainer Agreement ("RC Law Agreement") with RC Law Group with Burns' purported electronic signature. Exhibit "F," RC Law Agreement; Exhibit "E," Plaintiff's Discovery Responses.

25. The RC Law Agreement states that Burns retained RC Law Group "to provide legal advice and services for suits and issues that may arise under the Fair Debt Collection Practices Act." Exhibit "F," RC Law Agreement (emphasis added).

26. The Scope of Representation in the RC Law Agreement states that "RC Law agrees to represent Client with respect to potential claims for the types of claims listed above.

3

RC Law will investigate potential claims and if RC Law deems such potential claims viable, RC Law will file suit on Client's behalf and/or seek to have the debt collector(s) settle the claim(s)." Exhibit "F," RC Law Agreement.

27. Nowhere in the CS360 Agreement or the RC Law Agreement is it stated that Burns retained CS360 or RC Law Group to handle a claim against ARR.

28. The RC Law Agreement states that "the Client's agents should also be treated as clients, including Collection Shield 360." Exhibit "F," RC Law Agreement.

29. The RC Law Agreement states that it "is to be interpreted in accordance with the laws of the State of New York and with the ethical requirements of that jurisdiction." Exhibit "F," RC Law Agreement.

30. The CS360 Agreement provides that it shall only receive payment from FDCPA settlement funds. Exhibit "D," CS360 Agreement.

31. The RC Law Agreement provides that Ridgeway would receive 20% of the settlement amount on a FDCPA statutory award up to $1,000, but her portion of the settlement would not be less than $200. Exhibit "F," RC Law Agreement.

32. As such, RC Law Group would retain 80% of a $1,000 statutory FDCPA award.

33. Further, RC Law Group is entitled to retain 45% of any actual damages recovered under the FDCPA. Exhibit "F," RC Law Agreement.

34. Burns did not sustain any actual damages. Exhibit "C," Burns Dep. 49:3-51:5.

35. Finally, RC Law Group is entitled to retain all attorney's fees and costs awarded under the FDCPA. Exhibit "F," RC Law Agreement.

36. During the course of discovery, ARR took the deposition of David Bergida, who was the corporate designee of CS360. Exhibit "G," Bergida Dep. 1; Exhibit "H," Bergida Dep. 2.

37. At the deposition, Bergida produced a redacted copy of the CS360 Agreement. Exhibit "G," Bergida Dep. at exhibit 2.

38. Bergida testified that if RC Law Group was successful with its lawsuit, CS360 would not receive any money. Exhibit "G," Bergida Dep. 1 86:16-22, 90:13-91:3.

39. However, Bergida testified that RC Law Group compensates CS360 for referring clients to RC Law Group. Exhibit "G," Bergida Dep. 106:6-20.

HIGH SWARTZ LLP

By: /s/ Kevin Cornish

Kevin Cornish, Esquire
kcornish@highswartz.com
40 East Airy Street
Norristown, PA 19404
610-275-0700 (voice); 610-275-5290 (fax)
Counsel for Defendant AR Resources, Inc.

Date: January 16, 2017

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TONYA TAYLOR-BURNS : | |
|     Plaintiff, : | |
| : | No.   16-1259 |
| v. : | |
| : | |
| AR RESOURCES, INC. : | |
|     Defendant. : | |
| : | |

### CERTIFICATE OF SERVICE

I, Kevin Cornish, Esquire hereby certify that on January 16, 2017, I caused to be served a true and correct copy of Defendant's Notice of Motion for Summary Judgment, Statement of Materials Facts, Brief, and Proposed Form of Order to be served upon the following individual via the ECF system:

Daniel Kohn, Esquire
RC Law Group
285 Passaic Street
Hackensack, NJ 07601

HIGH SWARTZ LLP

By: _____
Kevin Cornish, Esquire
kcornish@highswartz.com
40 East Airy Street
Norristown, PA 19404
610-275-0700 (voice); 610-275-5290 (fax)
Counsel for Defendant AR Resources, Inc.

Date: January 16, 2017