# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Tonya Taylor-Burns,<br><br>        Plaintiff,<br><br><br>    v.<br><br><br>AR Resources, Inc.,<br><br>        Defendant. | Case Action No. 1:16-CV-01259-RWS |

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiff Tonya Taylor-Burns ("Ms. Taylor-Burns") hereby respectfully submits this Memorandum of Law in Opposition to the Motion for Summary Judgement of Defendant AR Resources, Inc. ("Defendant").

## FACTUAL AND PROCEDURAL BACKGROUND

By way of a summary, Ms. Taylor-Burns commenced this action in the Civil Court of the City of New York, New York County. Defendant removed the case to this Court on February 18, 2016.

Ms. Taylor-Burns asserts claims for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq. (the "FDCPA") stemming from

Defendant's failure to remove or notate as disputed a debt reported to credit reporting agencies after Ms. Taylor-Burns put Defendant on notice of a dispute by way of a letter dated June 5, 2015, which Defendant received.  On July 20, 2015, the debt reported by Defendant remained without a notice of a dispute.  The crux of the case is not the service agreement with a non-party, but the impact on Plaintiff's credit when Defendant failed to take proper actions in response to Ms. Taylor-Burns' dispute letter.

## STANDARD OF REVIEW

A grant of summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, the "burden of demonstrating that no material fact exists lies with the moving party." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1744 (2012).  In evaluating a summary judgment motion, "the evidence of the non-movant is to be believed; all permissible inferences are to be drawn in [the non-movant's] favor; and the court must disregard all evidence favorable to the moving party that the jury is not required to believe." Redd v. N.Y. State Div. of Parole, 678 F.3d 166, 174 (2d Cir. 2012) (internal quotation marks omitted).  As a result, "[s]ummary judgment is inappropriate when the admissible materials in the record 'make it arguable' that the claim has merit," or "[w]here an

issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility." Id. (internal quotation marks omitted). "In sum, summary judgment is proper only when, with all permissible inferences and credibility questions resolved in favor of the party against whom judgment is sought, there can be but one reasonable conclusion as to the verdict, i.e., it is quite clear what the truth is." Id. (internal quotation marks omitted).

## LEGAL ARGUMENT

### I.     THE DEFENDANT VIOLATED THE FDCPA

The FDCPA was enacted to eliminate abusive debt collection practices by debt collectors. 15 U.S.C. § 1692e. It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Forman v. Academy Collection Serv., Inc.*, 388 F. Supp. 2d 199, 202 (S.D.N.Y. 2005); *Friedman v. Sharinn & Lipshie, P.C.*, 2013 U.S. Dist. LEXIS 64541, 2013 WL 1873302, *8 (E.D.N.Y. Mar. 28, 2013); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992).

The FDCPA broadly prohibits abusive conduct of debt collectors. *Spira v. I.C. Sys.*, 2006 U.S. Dist. LEXIS 72640, 2006 WL 2862493 (E.D.N.Y. Oct. 5, 2006).  It is a remedial statute in nature and must be construed in a liberal fashion by the courts if the underlying Congressional purpose is to be effectuated. *Vincent*

*v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013) (quoting *N.C. Freed Co. v. Bd. of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir.1973)); *see also Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989).

Section 1692e of the FDCPA alone contains 16 subsections that set forth a non-exhaustive list of practices that fall within the prohibitions imposed upon debt collectors.  15 U.S.C. § 1692e.  While the FDCPA forbids a variety of conduct, the substantive heart of the FDCPA lies in three broad prohibitions.  First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  § 1692d.  Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  § 1692e.  Third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  § 1692f.

"The question of whether a debt collector's action violates the FDCPA is determined objectively from the viewpoint of the 'least sophisticated consumer.'" *Herzlinger v. Nichter*, No. 7:09-CV-00192, 2011 U.S. Dist. LEXIS 42133, 2011 WL 1434609, at *4 (S.D.N.Y. Feb. 9, 2011) (quoting *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998)); see also *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)(in determining whether a practice violates the FDCPA, "[t]he most widely accepted test . . . is an objective standard

based on the 'least sophisticated consumer.'  This standard has been widely adopted by district courts in [the Second] [C]ircuit.").  The underlying purpose of this standard "serves [a] dual purpose: it (1) ensures the protection of all consumers, even the naïve and trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Clomon*, 988 F.2d at 1320; *see also Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008).

The FDCPA contains a number of subsections that authorize the filing of private suits against debt collectors who use unfair or improper practices.  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 615 (2010).  For example, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of a debt," which includes the "false representation of…the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2).

Furthermore, section 1692e of the FDCPA states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  Sections 1692e(8) and (10) also provide examples of specific conduct that violates this provision, including "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false,

including the failure to communicate that a disputed debt is disputed" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e(8) and 1692e(10). Lastly, section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. As the FDCPA is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated. *Vincent v. The Money Store*, 736 F.3d 88, 98 (2nd Cir. 2013).

The facts here are clear cut. The Defendant had knowledge of the dispute on 6/5/2015 and re-reported the debt without marking it as disputed or deleting it as required under 15 U.S.C. §§ 1692e(8)There is ample case law in support of our position. *See Wilhelm v. Credico, Inc.,* 519 F.3d 416 (8th Cir.2008) - "The relevance of the portion of § 1692e(8) on which [plaintiff] relies—"including the failure to communicate that a disputed debt is disputed"—is rooted in the basic fraud law principle that, if a debt collector *elects* to communicate "credit information" about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt. This interpretation is confirmed by the relevant part of the Federal Trade Commission's December 1988 Staff Commentary on the [FDCPA]:

1. Disputed debt. If a debt collector knows that a debt is disputed by the consumer ... *and reports it to a credit bureau,* he must report it as disputed.

2. Post-report dispute. *When a debt collector learns of a dispute after reporting the debt to a credit bureau, the dispute need not also be reported.*

*Id.* at 418 (emphasis in original) (citing FTC Staff Commentary, 53 Fed.Reg. 50097–02,50106(Dec.13,1988)).

Several district courts have followed the *Wilhelm* court's approach. *See, e.g., Jacques v. Solomon & Solomon P. C.,* 2012 U.S. Dist. LEXIS 118092, * 11 (D.Del.2012) ("The duty to report a debt under [Section 1692e(8) ] arises only if one elects to report credit information"); *Donatelli v. Warmbrodt,* 2011 U.S. Dist. LEXIS 69207, *27–28 (W.D.Pa.2011) ("There is no authority to support the proposition that a debt collector must inform the credit reporting agency that the consumer disputes the debt") (citation omitted); *Edeh v. Aargon Collection Agency, LLC,* 2011 U.S. Dist. LEXIS 79160, *11 (D.Minn.2011) ( "when a debt collector learns that a debt is disputed only after the collector has reported the debt to the credit reporting agencies, the collector has no affirmative obligation to report the dispute"); *Benson v. Med–Rev Recoveries, Inc. (In re Benson),* 445 B.R. 445,

449–50 (Bankr.E.D.Pa.2010) ( "Plaintiff's premise is that a disputation of a debt after such debt is reported by a consumer reporting agency creates a duty on the entity that informed or furnished such information to the agency to update the credit report to reflect that such debt is disputed. This is incorrect...."); *Kinel v. Sherman Acquisition II LP,* 2006 U.S. Dist. LEXIS 97073, *53–54 (S.D.N.Y.2006) (noting a "dearth of precedent" on the issue of whether a debt collector has an affirmative duty to report a dispute made after it initially reported the debt, relying upon the 1988 FTC Commentary, and stating that "the FTC Commentary has interpreted § 1692e(8) as not explicitly requiring a debt collector to update information about the disputed status of a debt about which it has not reported, or about which it has already reported prior to a consumer's dispute"); *Black v. Asset Acceptance, LLC,* 2005 U.S. Dist. LEXIS 43264, *13 (N.D.Ga.2005) ("only *if* a debt collector reports a consumer debt to a credit bureau under Section 1692e(8) must he then also report that debt as disputed") (emphasis in original).

## II.    PLAINTIFF'S DISPUTE IS VALID

### A. Defendant Had Knowledge Of Plaintiff's Dispute Letter

The FDCPA establishes a general prohibition against the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The sixteen subsections of Section 1692e set forth

a non-exhaustive list of practices that fall within this ban.  Fasten v. Zager, 49 F. Supp. 2d 144, 149, 1999 U.S. Dist. LEXIS 7666, *8 (E.D.N.Y. 1999).

15 USCS § 1692e(8), provides that "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. §1692e(8). This standard "requires no notification by the consumer at all, let alone a written communication. It depends solely on the debt collector's knowledge...regardless of how or when the collector acquires that knowledge." Ong v. Am. Collections Enter., 1999 U.S. Dist. LEXIS 409, *9, No. 98- CV-5117. 1999 WL 51816, at *3 (E.D.N.Y. Jan. 15, 1999) (citation omitted). *(Also See Brady v. The Credit Recovery Co., Inc., 160 F.3d 64, 67 (1st Cir. 1998).*

It does not matter the manner in which the dispute is sent or received, or generally communicated, only that the debt collector knows or should have known of the dispute. This "knows or should know" standard requires no notification by the consumer, written or oral, and instead, depends solely on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is acquired. *See Id.; Wilhelm v. Credico, Inc., 519 F.3d 416, 418 (8th Cir. 2008);*

Furthermore, the consumer's right to take the position, at least initially, that the debt is disputed does not depend on whether the consumer has a valid reason not to pay. The consumer, for example, may not recognize the name of the

9

creditor, may not know whether she incurred the debt, may have a question whether the debt (or part of it) has been paid, or may be unsure of the amount. DeSantis v. Computer Credit, Inc., 269 F.3d 159, 162, 2001 U.S. App. LEXIS 23587, *7 (2d Cir. N.Y. 2001). *(See also Hoffman v. Partners in Collections, Inc., 1993 U.S. Dist. LEXIS 12702, *9 (N.D. Ill. Sept. 13, 1993).* "There is no requirement that any dispute be "valid" for this statute to apply; only that there be a dispute.")

Sending a letter by fax is a valid means of disputing a debt under the FDCPA. The specifics of such transmission are of no consequence as to its validity. It is undisputed that Defendant was in receipt of Plaintiff's June 5, 2015 dispute letter. Defendant knew or should have known of Ms. Taylor-Burns' dispute, and as such, should have marked her account as disputed, or delete it from reports sent to credit reporting agencies. Accordingly, Defendant's failure to take proper actions in response to its receipt of Plaintiff's dispute letter was in violation of the FDCPA.

## B. Plaintiff's Agent Had Authority To Act On Its Behalf

"Actual authority is created by direct manifestations from the principal to the agent, and the extent of the agent's actual authority is interpreted in the light of all circumstances attending those manifestations, including the customs of

business, the subject matter, any formal agreement between the parties, and the facts of which both parties are aware." Peltz v. SHB Commodities, Inc., 115 F.3d 1082, 1088 (2d Cir. 1997) (internal quotation marks omitted).

"In New York, an agency relationship 'results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act.'" *N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.), 266 F.3d 112, 122 (2d Cir. 2001) (citation omitted).* Hutter v. Countrywide Bank, N.A., 41 F. Supp. 3d 363, 383, 2014 U.S. Dist. LEXIS 117847, *36(S.D.N.Y. 2014)

An agency relationship may be established by express language, see, e.g., Pensee Assocs., Ltd. v. Quon Indus., Ltd., 241 A.D.2d 354, 355, 660 N.Y.S.2d 563 (1st Dep't 1997) (plaintiff owner of telephones agreed to allow defendant to sell them on commission basis), or may be implied by conduct of the principal. "An agent has actual authority if the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on this power, either explicitly or implicitly. *Ford v. Unity Hosp., 32 N.Y.2d 464, 299 N.E.2d 659, 664, 346 N.Y.S.2d 238 (N.Y. 1973)* ("An agent's power to bind his principal is coextensive with the principal's grant of authority."). Highland Capital Mgmt. LP v. Schneider, 607 F.3d 322, 327, 2010 U.S. App. LEXIS 15231, *11-12, 76 Fed. R. Serv. 3d (Callaghan) 1651 (2d Cir. N.Y. 2010)

Apparent authority may exist in the absence of authority in fact, and, if established, may bind one to a third party with whom the purported agent had contracted even if . . . the third party is unable to carry the burden of proving that the agent actually had authority." Greene v. Hellman, 51 N.Y.2d 197, 204, 412 N.E.2d 1301, 433 N.Y.S.2d 75 (1980). Where an agency relationship is established, knowledge of the agent in all matters within the scope of the agency is imputed to the principal. See Gulf Ins. Co. v. Transatlantic Reinsurance Co., 69 A.D.3d 71, 97, 886 N.Y.S.2d 133 (1st Dep't 2009) *(quoting Farr v. Newman, 14 N.Y.2d 183, 187, 199 N.E.2d 369, 250 N.Y.S.2d 272 (1964))*.

Both implied actual authority and apparent authority are "dependent on verbal or other acts by a principal which reasonably give an appearance of authority to conduct the transaction." Greene v. Hellman, 51 N.Y.2d 197, 204, 412 N.E.2d 1301, 433 N.Y.S.2d 75 (1980). "[I]n the case of implied actual authority, these [acts] must be brought home to the agent, while in the apparent authority situation, it is the third party who must be aware of them." Id.; *See also Pyramid Champlain Co. v. RP. Brosseau & Co., 267 A.D.2d 539, 544, 699 N.Y.S.2d 516 (3d Dep't 1999) ("An agency relationship by conduct may be established by words or conduct of a principal, communicated to a third party, that gives rise to an appearance and reasonable belief that an agency has been created and the agent possesses the authority to enter into a transaction." (internal quotation marks and*

*citation omitted))*. In the case of apparent authority, "the third party's reasonable reliance upon the appearance of authority binds the principal." <u>Standard Funding Corp. v. Lewitt</u>, 89 N.Y.2d 546, 551, 678 N.E.2d 874, 656 N.Y.S.2d 188 (1997).

It is undisputed that Ms. Taylor-Burns entered into a service agreement with Collection Shield 360 ("CS360"). Ms. Taylor-Burns actively sought out CS360's services and provided the requisite information needed to best assist her in credit repair matters. Ms. Taylor-Burns willingly entered into the CS360 Service Agreement and granted CS360 the authority to act on her behalf as her agent for credit repair matters.

In sending the June 5, 2015 Dispute Letter, CS360 was acting pursuant to the actual authority in fact bestowed upon it by Ms. Taylor-Burns. Even *assuming arguendo* that the Service Agreement was for some reason invalid, CS360 would still have the implied authority to act on behalf of Ms. Taylor-Burns. The actions taken by both parties are indicative of, and evidence of, a clear intent to create an implied agency relationship, whereby CS360 was allowed to act on Ms. Taylor-Burns' behalf.

Accordingly, Plaintiff's agent had authority to act on Plaintiff's behalf in sending the June 5, 2015 dispute letter.

## III. <u>VALIDITY OF THE FEE AGREEMENT IS NOT RELEVANT TO THE MOTION FOR SUMMARY JUDGMENT</u>

The instant motion at Bar is to determine whether or not Plaintiff was harmed by Defendant's violation of the FDCPA. Specifically, whether Defendant failed to take proper actions in response to its receipt of Ms. Taylor-Burns' June 5, 2015 dispute letter. Defendant argues that it should be granted summary judgment on Plaintiff's claims for fees, arguing that Ms. Taylor-Burns' fee arrangement is illegal and invalid. This is irrelevant at this stage of proceedings, and is better suited for when the Court is set to make a determination of damages and fees. As such, Plaintiff will reserve its right to file opposition to Defendant's argument that Plaintiff's fee arrangement was illegal and invalid. Should the Court make a finding in favor of Plaintiff, Plaintiff will address the issue at that time in support of its application for damages and fees.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendant's motion for summary judgment should be denied in its entirety.

Dated: March 30, 2017          **RC LAW GROUP, PLLC**
*Attorneys for Plaintiff*

By:/s/ Daniel Kohn
285 Passaic Street
Hackensack, NJ 07601
Phone: (201) 282-6500
Fax: (201) 282-6501
Email: dkohn@rclawgroup.com