UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

TONYA TAYLOR-BURNS,

              Plaintiff,          16 Civ. 1259

  -against-                              OPINION

AR RESOURCES, INC.,

              Defendant.

------------------------------------X

A P P E A R A N C E S :

<u>Attorneys for Plaintiff</u>

RC LAW GROUP, PLLC
185 Passaic Street
Hackensack, NJ 07601
By: Daniel Kohn, Esq.
    Matthew Ari Sarles, Esq.

<u>Attorneys for Defendant</u>

High Swartz LLP
40 East Airy Street
Norristown, PA 19404
By: Kevin Cornish, Esq.
    Thomas Rees, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/17/17

**Sweet, D.J.**

Defendant AR Resources, Inc. ("ARR" or the "Defendant"), a debt collection business, has moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment to dismiss the complaint of plaintiff Tonya Taylor Burns ("Burns" or the "Plaintiff") alleging violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") (the "Complaint"). Based upon the facts and conclusions set forth below, the motion of the Defendant is granted, and the Complaint is dismissed.

## I. Prior Proceedings

The Complaint was filed in the Civil Court of the City of New York on January 11, 2016 and removed to this court on February 18, 2016.

In her Complaint, Plaintiff alleges that ARR failed to list an account as disputed after she purportedly sent a letter to ARR disputing the debt. Compl. ¶ 11. She alleges that ARR's failure to report the debt as disputed violates multiple provisions of the FDCPA. *Id.* ¶ 13. Plaintiff is requesting

1

actual damages, statutory damages, and attorney's fees and costs.

On May 19, 2016, this Court dismissed the instant action without prejudice for failure to prosecute, giving the Plaintiff an additional 30 days to show cause to reopen the case. The case was reopened upon endorsement of a letter from the Plaintiff's counsel at RC Law Group dated June 16, 2016, explaining that the failure to prosecute resulted from the resignation of the attorney of record from the firm.

The instant motion was heard and marked fully submitted on April 5, 2017.

II.  **The Facts**

The facts have been set forth in the unopposed Statement of Material Facts in Support of Defendant's Motion for Summary Judgment. They are summarized below.

Plaintiff was deposed on September 13, 2016. See Motion for Summary Judgment, ECF No. 27,[1] Ex. C [hereinafter, "Taylor-Burns Dep."]. During her deposition, she identified the

---

[1] All citations to exhibits are attachments to the Motion for Summary Judgment, ECF No. 27, unless otherwise noted.

purported dispute letter ("Letter") that was dated June 5, 2015. Ex. B.; Taylor-Burns Dep. 4:21-5:3.

Plaintiff testified at her deposition that she did not write, send, or sign the Letter. Taylor-Burns Dep. 4:25-5:12. She testified that Credit Shield 360 ("CS360") sent it. *Id.* at 5:2-3. The Letter was sent via facsimile from 1-303-991-7930, which is a Denver, Colorado area code. Ex. B. The Plaintiff was not in Denver, Colorado on June 5, 2015; she resides in Manhattan. Taylor-Burns Dep. 4:11-13; 7:7-9.

CS360, the entity that sent the letter, is a credit repair agency. Taylor-Burns Dep. 7:25-8:1. Plaintiff contacted CS360 around May of 2015 to obtain credit repair services. Taylor-Burns Dep. 8:2-5, 9:4-10:15.

She stated that she did not sustain any actual damages. Taylor-Burns Dep. 49:3-51:5.

After Plaintiff's deposition, Plaintiff and CS360 produced an undated copy of a Collection Shield 360 Service Agreement ("CS360 Agreement") with Plaintiff's purported electronic signature. See Ex. D; Ex. E (Plaintiff's Discovery Responses). The CS360 Agreement states that Plaintiff is not

3

responsible to pay CS360 for the deletion of collection accounts. Ex. D. However, CS360 is entitled to "receive a fee of $150.00 per Deleted Collection account only from FDCPA settlement funds collected for Client in excess of $200.00." *Id.* The CS360 Agreement provides that it shall only receive payment from FDCPA settlement funds. *Id.*

The CS360 Agreement also authorizes CS360 "to share any info [sic] that could be a potential claim against such companies with RC Law Group so that it may pursue such claims on my behalf." *Id.* CS360 and RC Law Group, the firm representing Plaintiff in this action, both do business at 7150 Parsons Avenue, Flushing, NY. Exs. G & H. Plaintiff testified that she did not sign any fee agreement with RC Law Group. Taylor-Burns Dep. 52:1-7.

Plaintiff also produced an undated Retainer Agreement with RC Law Group ("RC Law Agreement") bearing her purported electronic signature after her deposition. Ex. F; *see also* Ex. E (Plaintiff's Discovery Responses). The RC Law Agreement states that Plaintiff retained RC Law Group "to provide legal advice and services for suits and issues that may arise under the Fair Debt Collection Practices Act." Ex. F. The Scope of Representation in the RC Law Agreement states that:

4

> RC Law agrees to represent Client with respect to potential claims for the types of claims listed above. RC Law will investigate potential claims and if RC Law deems such potential claims viable, RC Law will file suit on Client's behalf and/or seek to have the debt collector(s) settle the claim(s).

*Id.* The RC Law Agreement states that "the Client's agents should also be treated as clients, including Collection Shield 360." *Id.*

The RC Law Agreement provides that the Plaintiff would receive 20% of the settlement amount on a FDCPA statutory award up to $1,000, but her portion of the settlement would not be less than $200. As such, RC Law Group would retain 80% of a $1,000 statutory FDCPA award. Further, RC Law Group is entitled to retain 45% of any actual damages recovered under the FDCPA, and all attorney's fees and costs awarded under the FDCPA. *Id.* The Agreement states that it "is to be interpreted in accordance with the laws of the State of New York and with the ethical requirements of that jurisdiction." *Id.*

Nowhere in the CS360 Agreement or the RC Law Agreement is it stated that Plaintiff retained CS360 or RC Law Group to handle a claim against ARR.

5

During the course of discovery, ARR took the deposition of David Bergida, who was the corporate designee of CS360. Ex. G [hereinafter, "Bergida Dep."]; *see also* Ex. H. At the deposition, Bergida produced a redacted copy of the CS360 Agreement. He stated that he did not think that CS360 would receive any payment from RC Law Group if RC Law Group was successful in recovering money for the Plaintiff in the instant action. Bergida Dep. 86:16-22, 90:13-91:3. However, Bergida testified that RC Law Group compensates CS360 for referring clients to RC Law Group. Bergida Dep. 106:6-111:24.

### III. The Applicable Standard

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to

6

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477 U.S. at 249). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

While the moving party bears the initial burden of showing that no genuine issue of material fact exists, *Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005), in cases where the non-moving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "It is ordinarily sufficient for the movant to point to a lack of evidence . . . on an essential element of the non-movant's claim . . . . [T]he nonmoving party must [then] come forward with admissible evidence sufficient to raise a genuine

7

issue of fact for trial." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party . . . must come forward with evidence that would be sufficient to support a jury verdict in his favor"). In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**IV.    The CS360 Agreement is Void and Unenforceable**

Plaintiff's claim is based upon ARR's failure to report a debt as disputed after receiving the Letter. The relevant section of the FDCPA provides that "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). ARR does not dispute that it received the Letter, or that it did not report the debt as disputed; rather, ARR argues that the Letter was written and sent without actual

8

or apparent authority because CS360 is a credit repair organization, subject to the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*, and the contract between the Plaintiff and CS360 did not meet the CROA requirements. Thus, the issue is whether ARR, the debt collector, received a valid dispute of the debt.

The term "credit repair organization," according to the CROA:

> (A) means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of--
>
> (i) improving any consumer's credit record, credit history, or credit rating; or
>
> (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i); and
>
> (B) does not include—
>
> (i) any nonprofit organization which is exempt from taxation under section 501(c)(3) of Title 26;
>
> (ii) any creditor (as defined in section 1602 of this title), with respect to any consumer, to the extent the creditor is assisting the consumer to restructure any debt owed by the consumer to the creditor; or
>
> (iii) any depository institution (as that term is defined in section 1813 of Title 12) or any

9

> Federal or State credit union (as those terms are defined in section 1752 of Title 12), or any affiliate or subsidiary of such a depository institution or credit union.

15 U.S.C. § 1679a(3). CS360 is a credit repair organization as defined by the CROA. Burns Dep. 7:25-8:1; Ex. D (CS360 Agreement).

The statute requires a written contract between the client and the organization to include several mandatory terms and disclosures. The CROA makes any contract not in compliance with the CROA void and unenforceable:

> Any contract for services which does not comply with the applicable provisions of this subchapter—
>
> (1) shall be treated as void; and
>
> (2) may not be enforced by any Federal or State court or any other person.

15 U.S.C. § 1679f(c).

The CS360 Agreement failed to comply with the following provisions of the CROA:

- Failure to include the required written statement with the contract as set forth in 15 U.S.C. § 1679c;

- Failure to have a dated contract - 15 U.S.C. § 1679d(a)(1);

10

- Failure to provide a full and detailed description of the services to be provided – 15 U.S.C. § 1679d(b)(2);

- Failure to provide an estimate of the date by which the performance of the services will be complete– 15 U.S.C. § 1679d(b)(2)(B)(i);

- Failure to provide the length of the time period necessary to perform such services – 15 U.S.C. § 1679d(b)(2)(B)(ii);

- Failure to identify the credit repair organization's principal business address – 15 U.S.C. § 1679d(b)(3);

- Failure to include the three day cancellation notice– 15 U.S.C. § 1679d(b)(4).

Because the Plaintiff's contract with CS360 fails to comply with the CROA, the CS360 Agreement is void and this Court will not enforce it. 15 U.S.C. § 1679f(c)(1)-(2).

The lack of a CROA-compliant contract between CS360 and Plaintiff – and therefore the lack of a valid contract between CS360 and Plaintiff – means that CS360 had no authority to send the Letter on Plaintiff's behalf. *Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010) ("An agent must have authority, whether apparent, actual or implied, to bind his principal.").

11

As previously noted, the Plaintiff testified that she did not prepare, sign, or send the Letter. Ex. B; Taylor-Burns Dep. 4:25-5:12. She contacted CS360, which sent the Letter on her behalf. Taylor-Burns Dep. 5:6-9. Therefore, no valid dispute was made, ARR cannot be liable for an alleged failure to report the debt as disputed, and the ARR motion for summary judgment dismissing the Complaint is granted.

**V.  The Claim for Attorneys' Fees is Dismissed**

Plaintiff produced a fee agreement with her counsel, RC Law Group, which states that it is governed by New York law. Ex. F. The issue is whether the RC Law Agreement violates New York's champerty laws and ethical rules.

"Champerty, as a term of art, grew out of the practice where someone bought an interest in a claim under litigation, agreeing to bear the expenses but also to share the benefits if the suit succeeded." *Justinian Capital SPC ex rel. Blue Heron Segregated Portfolio v. WestLB AG*, 37 Misc.3d 518, 523-24 (N.Y. Sup. Ct. 2012) (quoting *Bluebird Partners, L.P. v. First Fidelity Bank, N.A.*, 731 N.E.2d 581, 585 (N.Y. 2000)). Champerty was developed "to prevent or curtail the commercialization of or

trading in litigation." *Id.* New York adopted the prohibition against champerty by statute, providing:

> An attorney or counselor shall not:
>
> Directly or indirectly, buy, take an assignment of or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose of bringing an action thereon.

N.Y. Judiciary Law § 488(1) (McKinney).

The facts set forth above establish that CS360 identifies potential individuals to act as plaintiffs in consumer protection lawsuits filed by RC Law Group. The CS360 Agreement states that CS360 provides free credit repair services to clients, and CS360 receives payment of $150.00 "from FDCPA settlement funds collected for Client in excess of $200.00." Ex. D. However, CS360 is not a law firm and cannot represent clients in FDCPA lawsuits. The CS360 Agreement further provides that CS360 is authorized "to share any info that could be a potential claim against such companies with RC Law Group so that it may pursue such claims on my behalf." *Id.* RC Law Group identifies CS360 as a client in its fee agreement. Ex. F. As evidenced by the CS360 Agreement, the RC Law Agreement, and the deposition of Bergida, CS360 and RC Law Group are intertwined entities,

13

generating revenue through the filing of lawsuits such as this one.

The CS360 Agreement and the RC Law Agreement show that these entities' operations depend upon clients signing over the majority of their interests in their lawsuits to CS360 and RC Law Group, allowing the entities to pursue FDCPA claims as they please and share in the majority of any recovery. The RC Law Agreement states that RC Law Group is providing "legal advice and services for suits and issues that may arise" under the FDCPA. **Ex.** F. It further states that "RC Law will investigate potential claims and if RC Law deems such potential claims viable, RC Law will file suit on Client's behalf and/or seek to have the debt collector(s) settle the claim(s)." Ex. F. Based on this language, RC Law Group is retained by clients such as the Plaintiff in the instant action, through those clients' agreements with CS360, to pursue claims not identified at the time of the alleged agreement. RC Law Group thereby assumes a direct interest in the lawsuit.

The RC Law Agreement provides that RC Law is entitled to take 45% of any actual damages recovery, 80% of any statutory damages, and all attorney's fees and costs. Given that there is no evidence of actual damages in this case, Plaintiff therefore

14

stands to recover at most $200, and likely only $50 after payment of CS360's $150 fee for a successful FDCPA claim.[2] *See* Exs. E & F. Through the RC Law Agreement and CS360 Agreement, RC Law Group has directly or indirectly taken over an interest in the Burns' cause of action, which is prohibited by the champerty laws of New York.

In addition, Rule 1.8(i) of New York Rules of Professional Conduct prohibits a lawyer from acquiring a proprietary interest in a lawsuit. By taking an 80% contingent fee on statutory damages and 45% contingent fee on actual damages, in addition to all attorney's fees and costs, RC Law Group took a proprietary interest in this lawsuit. NY ST RPC Rule 1.8(i) (McKinney). Rule 5.4 prohibits a lawyer from sharing legal fees with a non-lawyer. The CS360 Agreement states that RC Law Group pays CS360 $150.00 out of FDCPA settlements that RC Law Group obtains on behalf of client's such as Burns. NY ST RPC Rule 5.4 (McKinney). Rule 7.2 prohibits a lawyer from compensating a person or organization to recommend or obtain employment by a client. NY ST RPC Rule 7.2 (McKinney). During Bergida's deposition, he testified that RC Law Group compensates

---

[2] In the scenario that a client such as the Plaintiff here could prove actual damages, the client would obtain 55% of such damages and RC Law Group would retain 45% of such damages. Burns testified that she does not have any actual damages. Taylor-Burns Dep. 49:3-51:5.

15

Law Group compensates CS360 for referring clients to RC Law Group. Bergida Dep. 106:6-20; *see also In re Clark*, 77 N.E. 1, 2 (N.Y. 1906) (punishing lawyer for paying a third party to obtain clients on the attorney's behalf).

Based on the violations of the New York Rules of Professional Conduct, and the champerty laws discussed above, ARR's motion for summary judgment is granted and the Plaintiff's claim for attorney's fees is dismissed.

**VI. Conclusion**

Upon the facts and conclusions set forth above, the summary judgment motion of ARR is granted and the Complaint is dismissed with prejudice.

It is so ordered.

**New York, NY**
**July /14, 2017**

_____
ROBERT W. SWEET
U.S.D.J.